UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

MARY KAY TRESEDDER, f/k/a            Case No. DM 10-90420
MARY KAY ANDERSON,                Hon. Scott W. Dales

          Debtor.

_____/

MARY KAY TRESEDDER,

          Plaintiff,                Adversary Proceeding
                                    No. 12-99011

v.

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2005-2, A Delaware Statutory
Trust,

          Defendant.

_____/

OPINION AND ORDER GRANTING SUMMARY JUDGMENT

PRESENT:    HONORABLE SCOTT W. DALES
                   United States Bankruptcy Judge

Chapter 7 debtor and plaintiff Mary Kay Tresedder[1] (the "Debtor") filed a motion to reopen her chapter 7 case (Base Case DN 19) for the sole purpose of initiating this adversary proceeding through which she seeks a declaration discharging five separate debts she admittedly owes to the defendant, National Collegiate Student Loan Trust 2005-2 (the "Creditor"). After discovery, the Creditor filed a motion for summary judgment (the "Motion," DN 13) seeking an

_____

[1] Mary Kay Tresedder was named Mary Kay Anderson when she obtained the loans in question and when she filed her chapter 7 petition.

order excepting the five loans from discharge under § 523(a)(8).  The court heard oral argument on September 10, 2013 in Marquette, Michigan.  Both parties also filed supplemental briefs after the hearing, with the court's permission.  The court has reviewed the Motion, the Debtor's response, and the supplemental briefing, and will enter judgment for the Creditor for the following reasons.

## I.  JURISDICTION

The court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(a).  The United States District Court has referred the Debtor's case and this adversary proceeding to the bankruptcy court under 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).  This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) in which the court may enter final judgment.

## II.  BACKGROUND

The following facts, drawn from the parties' papers, are not disputed.  The Debtor attended Baker College, taking online classes "off and on" from 2003 to 2007.  Her tuition bills for the semesters relating to the loans in question totaled $8,555.00.  Even so, she received $17,902.00 in federal student financial aid (loans and a Pell grant), as well as the proceeds from five private student loans at issue (the "Private Loans") totaling $112,150.00,[2] reportedly to defray her living expenses while taking the online courses.  While the Debtor was in school, she was battling cancer, which she now reports is in remission.  She eventually graduated and received an associate degree in business administration.

---

[2] The balance owed on the Private Loans, including interest, has now grown to more than $170,000.00.

The Debtor obtained her Private Loans from three separate commercial lenders.[3]  Each lender purchased a guaranty on its loan from The Educational Resources Institute ("TERI") at the time each lender made the loan.  Within one to four months of closing, each lender sold its loan to National Collegiate Funding LLC, which in turn transferred the loans to the Creditor.[4]  The Debtor eventually defaulted on all five Private Loans, and the Creditor sued her in state court in an attempt to collect the debt.  That lawsuit prompted the Debtor to reopen her bankruptcy case and file a complaint asking the court to find that the Private Loans do not qualify as student loans under § 523(a)(8), and, therefore, did not survive the discharge entered in her bankruptcy case.  Significantly, in response to the Motion, the Debtor makes no argument that repaying the Private Loans would impose an undue hardship on her.

## III.  SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).[5]  Once a moving party has met this burden, the non-moving party must provide specific evidence showing that there is a material issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see also* Fed. R. Civ. P. 56(c).  When identifying factual disputes, the court must draw inferences in favor of the non-moving party.  *Adickes v. S.H. Kress, Co.,* 398 U.S. 144, 157 (1970).

---

[3] The five Private Loans include one loan from Charter One, one loan from Bank of America, and three loans from JPMorgan Chase.

[4] Each transfer was made to a different, but similarly named, trust.  However, National Collegiate Student Loan Trust 2005-2 is the only defendant named by the Debtor, and no one has asserted that there should be any other defendant.  Because of the court's conclusion regarding the nature of the loans, any controversy in this respect is immaterial.

[5] Rule 56 applies to adversary proceedings under Fed. R. Bankr. P. 7056.

IV.  DISCUSSION

This case involves an astonishingly high amount of educational debt, totaling $178,036.19 according to the Creditor.  This sum is particularly shocking given that the Debtor obtained substantial assistance from other sources while taking online classes at Baker College.[6] These circumstances and the sheer magnitude of the debt could initially lead the court to the conclusion that the Private Loans would not qualify as educational loans.  However, the court's decision must depend upon procedural rules governing summary judgment and a federal statute expressing a policy choice exclusively within the prerogative of Congress, rather than the court's initial, visceral reaction.

The Creditor's Motion argued that the Private Loans should be excepted under § 523(a)(8)(A)(i) (a loan made, insured, or guaranteed by a governmental unit or under a program funded by a governmental unit or nonprofit institution), (a)(8)(A)(ii) (an obligation to repay funds received as an educational benefit, scholarship, or stipend), or (a)(8)(B) (a tax-qualified student loan).  Through oral argument and the supplemental briefs, however, the court and the parties have narrowed the issues.  For example, during the hearing, the Creditor disclaimed reliance on § 523(a)(8)(A)(ii).  And, other than the Debtor's admission in the promissory notes themselves, the record provides no support for characterizing the Private Loans as having been incurred for "qualified higher education expenses" under 26 U.S.C. § 221(d) and 20 U.S.C. § 1807*ll*.  *See* 11 U.S.C. § 523(a)(8)(B).  There is no evidence that Baker College made any determination regarding any allowance for room and board or other evidence tying the

---

[6] Perversely, everyone involved with the Private Loans appears to have acted rationally in taking advantage of an irrational system premised on one moral hazard after another.  *See* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 466-75, reprinted in 1978 U.S.C.C.A.N. 5787 (noting that student loans are not typically based on traditional underwriting factors).  At the end of the day, the Creditor will be stuck with claims that it will be permitted but probably unable to collect from the Debtor, who purchased a two-year degree from Baker College with a lifetime of debt, which was guaranteed by an entity that, after its own bankruptcy proceedings, is out of the guaranty business.  Ironically, the entities on the front and back ends of the transaction -- the original lenders and the college -- appear to have emerged unscathed.

loans to the costs of attendance.  20 U.S.C. § 1087*ll*(3) (cost of attendance means "an allowance (as determined by the institution) for room and board . . ." under various circumstances). Consequently, the Creditor is not entitled to judgment on these counts.  This leaves open only the question of whether the Private Loans should be excepted from discharge under § 523(a)(8)(A)(i).  To meet its burden for summary judgment, the Creditor must offer sufficient evidence that the Debtor received "educational loans" that were either:  (1) made, insured, or guaranteed by a governmental unit; or (2) made under any program funded in whole or in part by a governmental unit or nonprofit institution.

First, the Debtor has admitted, and the loan documents clearly indicate, that the lenders provided educational loans to her to cover expenses while she pursued her education.  While the Debtor has stated that she used some of the loan money for expenses other than her education, case law indicates that it is the purpose for which the lender made the loan, not how the borrower actually used the funds, that generally controls the characterization of the loan.  *Murphy v. Penn. Higher Educ. Assistance Agency (In re Murphy),* 282 F.3d 868, 870 (5th Cir. 2002); *Maas v. Northstar Education Finance, Inc. (In re Maas)*, 497 B.R. 863, 869 (Bankr. W.D. Mich. 2013) (citing *Murphy*, 282 F.3d at 870).  Therefore, the court finds that the Private Loans were educational loans.

Because the Creditor has not asserted that any type of governmental entity took part in the loan transactions, the remaining issue is whether the original lenders made the Private Loans under any program funded in whole or in part by a nonprofit institution.  11 U.S.C. § 523(a)(8)(A)(i).  This part of the statute requires the Creditor to show that:  (1) the Private Loans were made under a "program," and (2) the program was funded in whole or in part by a nonprofit institution.

The Creditor contends that all of the loan documents attached to the Motion refer to the "loan program." Further, the court notes that the loan documents contain nearly identical forms, even though they were prepared by different lenders, which provides additional evidence that a loan program was in place. But most importantly, the Debtor has not raised an issue about the existence of a program. In her pleadings and responses, she never contests that the Private Loans were made under a program. Even though the Creditor has not described with specificity the program under which the Private Loans were allegedly made, or even named the program, the record shows that a loan program facilitated these transactions, and no reasonable fact-finder would conclude otherwise.[7]

The final issue is whether the loan program was funded in whole or in part by a nonprofit institution. The record, viewed in favor of the Debtor, shows that the original lenders -- JPMorgan Chase, Bank One and Bank of America -- are not nonprofit institutions. However, each lender did purchase a guaranty on its loan from (the now-reorganized) TERI, and the record shows that it was a nonprofit institution. It also appears that TERI made no payments on account of the guarantees it made in connection with the Private Loans before it filed its own bankruptcy petition. Therefore, whether TERI actually "funded" the program under which the originating lenders made the Private Loans (as required to satisfy § 523(a)(8)(A)(i)) by issuing (but not honoring) guarantees is the remaining question of law and statutory interpretation.

---

[7] Again, Rule 56(a) requires that there be no *genuine* issue of material fact. In *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the Supreme Court clarified this standard when it held, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" There is ample evidence that the Private Loans were made under a program and no evidence that they were not. Based on this evidence, no rational trier of fact would find that the Private Loans did not involve a program. And, while there may be a "metaphysical doubt" as to the role of a program in the loan transactions, the Supreme Court has held that is not enough to create a genuine issue of material fact. *Id.* at 586. Therefore, the court finds that the lenders did make the Private Loans under a loan program.

First, in her responses to the Creditor's request for admissions (DN 13, Exhibit C), the Debtor admits that TERI played a key role in her loan transactions, and she has raised no challenges to the Creditor's factual claims in regards to the applicability of § 523(a)(8)(A)(i). Instead, the Debtor argues that the guarantees do not meet the funding requirement. She contends that "funding" and "guaranteeing" are two separate acts, as evidenced by the language of § 523(a)(8)(A)(i). The Debtor apparently relies on the exclusionary rule of statutory construction that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Continuing this argument, the first clause of § 523(a)(8)(A)(i) contains the language "made … or guaranteed by a governmental unit," while the next clause in the sentence reads "made under any program funded in whole or in part by a governmental unit or nonprofit institution." The second clause uses the word "funded" rather than "guaranteed" to describe the nonprofit organization's required role.

Were the court writing on a clean slate, it would be inclined to accept the Debtor's argument, principally because it honors two important rules of statutory construction: (1) courts must construe exceptions to discharge in favor of discharge, *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); and (2) courts must give meaning to every word in a statute where possible. *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 711 (6th Cir. 2012). The court, however, is mindful of the decisions the Creditor cites from the Sixth Circuit and the Second Circuit, which give § 523(a)(8) a broader interpretation.

In *Andrews University v. Merchant* (*In re Merchant*), 958 F.2d 738 (6th Cir. 1992), the Sixth Circuit held that guaranteeing educational loans does constitute "funding" the program

under which those loans were made.  The facts in *Merchant* are somewhat similar to those in this case, although there are some differences.  The debtor in *Merchant* took out a private loan to help fund her education at Andrews University.  The university, which was a nonprofit institution, guaranteed the loan as part of a loan program that it had established with the lender. When the debtor defaulted, the university honored its guaranty by purchasing the loan from the lender and then sought repayment from the debtor.  The Sixth Circuit held that the university's guaranty was "crucial" to the debtor's receiving the loan because the lender might not have provided the loan without the guaranty.  *Id.* at 740.  Therefore, the court held that the university's involvement in the program, by providing the guarantees, did amount to funding the program. *Id.*  The Sixth Circuit based its reasoning on the legislative history behind the student loan exception to discharge, which the court observed was enacted to prevent students from incurring large student loan debts and then obtaining a discharge shortly after graduation.  *Id.*  The court also focused on the public policy protecting the solvency of student loan programs, and the need for students to be able to obtain educational funding, and concluded that these policies outweigh a debtor's need for a fresh start.  *Id.*

Although *Merchant* may be distinguished on the ground that the guarantor did in fact honor its guaranty and provide funds to the lender upon the debtor's default, whereas TERI has not honored its guaranty (given its own bankruptcy), the Sixth Circuit's opinion in *Merchant* did not emphasize the fact that the guarantor eventually provided funding for a particular loan through its guaranty.  Instead, the *Merchant* panel looked at the guarantor's overall role in the program. *Id.*

Similarly, in *O'Brien v. First Marblehead Education Resources, Inc. (In re O'Brien)*, 419 F.3d 104 (2nd Cir. 2005), the Second Circuit concluded that a guarantor "funds" a loan program

within the meaning of § 523(a)(8)(A)(i).  In *O'Brien*, as here, the debtor obtained an educational loan from a private lender through one of TERI's loan programs, and TERI guaranteed the loan. When the debtor defaulted, TERI purchased the loan from the lender and attempted to collect from the debtor.  The Second Circuit held that since "TERI was clearly devoting some of its financial resources to supporting the program," through its role as guarantor, TERI was in fact funding the program.  *Id*. at 106.

In reaching this conclusion, the Second Circuit also noted that the promissory note for the debtor's loan explicitly stated that it was made under a loan program partially funded by a nonprofit institution.  *Id*.  Two of the promissory notes for the Private Loans in this case contain nearly the identical language,[8] providing evidence that the Private Loans were in fact made under a program at least partially "funded" by a nonprofit institution.

Given the Sixth Circuit's holding in *Merchant* and the Second Circuit's holding in *O'Brien,* the court is constrained to reject the Debtor's statutory argument.  Under the precedent of the Sixth Circuit as echoed by the Second, the record establishes that TERI, a nonprofit organization, "funded" the loan program.   Therefore, the Private Loans are subject to § 523(a)(8)(A)(i) and excepted from discharge.

Finally, the Creditor contends that there is no genuine issue as to the amount of its claim under the Private Loans.  The Creditor, however, did not make a counterclaim for a money judgment in this court, but instead has filed a complaint for such relief in state court.  Under the circumstances, although the court may have the authority to enter a money judgment in favor of the Creditor, the court is not inclined to grant relief beyond dismissing the Debtor's complaint. *See* Fed. R. Civ. P. 15(b)(2) and 54(c).  Accordingly, the Creditor is not entitled to judgment on

---

[8] The other three promissory notes also state that the loans are subject to the limitations on dischargeability and that TERI has guaranteed the loans, but they do not specifically state that TERI has funded the loan program.

this aspect of its Motion. The Creditor has not sought leave to amend its pleadings, and today's opinion resolves all issues properly pled in this adversary proceeding.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED to the extent it seeks a declaration that the Private Loans are excepted from the Debtor's discharge under § 523(a)(8)(A)(i) and DENIED in all other respects.

IT IS FURTHER ORDERED that the Clerk shall enter judgment dismissing the Debtor's` complaint, with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order, and the judgment to be entered, pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Paul M. Marin, Esq. and Biana Hamady, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 28, 2013**



Scott W. Dales
United States Bankruptcy Judge